## Dean Swift *versus* Francis Clark.

Where a mariner engaged for a voyage, and it was stipulated that no officer or seaman should be entitled to any part of his wages until the arrival of the ship at her port of discharge in the *United States*, and her cargo delivered, — the ship was lost on her passage to the *United States*: the mariner was holden entitled to his wages up to the last port of lading, and during half the time of her lying in such port.

This was *assumpsit* by a seaman against the master of a ship for his wages during a voyage from *Bath* to *Virginia*, thence to *Bremen*, and thence to *Liverpool*, in *England*; from which last place she sailed for *Boston*, and was, with the cargo on board, wholly lost on that passage, the mariners having been saved. It was agreed that the plaintiff remained on board the ship from the commencement of the voyage at *Bath* until she was lost as aforesaid, and performed his duty.

In the shipping paper was the following clause, *viz.:* " *No*

*officer or seaman belonging to said ship shall demand, or be entitled to, his wages, or any part thereof, until the arrival of the ship at her port of discharge in the* United States, *and her cargo delivered.*"

*Ames,* for the defendant. By the law of the *United States,* for the government and regulation of seamen in the [ * 174 ] * merchants' service, (1) it is provided " that every mariner or seaman shall be entitled to demand and re ceive, from the master or commander of the ship or vessel to which he belongs, one third part of the wages which shall be due to him, at every port where such ship or vessel shall unlade and deliver her cargo, before the voyage be ended, *unless the contrary be expressly stipulated in the contract.*" In the case at bar the contrary was stipulated, and, by the agreement of the plaintiff, he was to receive no wages until the voyage should be completed by the ship's arrival in her final port of discharge, in the *United States.* This was a condition precedent to his right to demand any wages, and it has failed. The language of the contract is explicit, and leaves no room for construction. The plaintiff put his whole earnings on the happening of a certain event : — that event has not occurred. (2)

*Orr,* for the plaintiff. The case of *Appleby* vs. *Dods* is a solitary decision, not supported by any one preceding or following it. It was there determined that au agreement similar to that in the pres ent case controls the provision of law that wages shall be paid when freight is earned. This was not the intent of the parties in the present case. They only intended to avoid the general pro vision of the statute. The owner desired that it should not be in the power of the seamen to diminish the profits of the voyage, by demanding their wages in a foreign port ; and to this, and this only, the seamen assented.

But, on the principle urged in the defence, each mariner was the *insurer of his own wages for the entire voyage ;* the freight earned on the outward passage, by the labor of the seamen, was the prop erty of the merchant, without any deduction for wages. This doc trine seems not entitled to favor. If the words of the stipulation, in the present case, admit of a construction consonant with the general principles of maritime law, that construction ought to prevail, as founded in justice and policy, the best interest of the parties, and the securing of the seamen's exertions for [ * 175 ] the * safety of the ship. The defendant's construction

(1) *U. S. Laws,* 1 *Cong.* 2 *Sess.* c. 29, § 6.
(2) *Abbot on Shipping, Story's* ed. 463, 485, 486. — 2 *Mass. Rep.* 30, *Brooks* vs. *Dorr & Al.* — 3 *Esp. Rep.* 71, *Sigard* vs. *Roberts.* — 4 *East,* 546, *Beale* vs. *Thompson.* — 8 *East,* 300, *Appleby* vs. *Dods* — 6 *D. & E.* 320, *Cutter* vs. *Powell.*

of the contract was long ago rejected by this Court. (3)   And the judges of the *United States* Court have made similar decisions. (4)

The other cases cited in the defence have no bearing on the present question.   A seaman may doubtless stipulate for a gross sum for the entire voyage, or agree to lose his wages in a certain event, and such an agreement would bind him ; but it must be explicit.

The case before the Court is not essentially different from that of a charter-party, by which the hire is to accrue by the month, but is payable after the return of the vessel.   In such case it has been decided, that the hire shall be recovered *pro ratâ,* if freight be earned, although the vessel never returns, but is lost. (5)

*Per Curiam.*   The question, in this case, is whether the terms of the contract are such as to prevent the plaintiff from recovering his wages up to the last port of delivery before the loss, and for half the time the ship was in that port, as stated, in the case of *Locke* vs. *Swan,* to be the rule of law.   And we are all of opinion that the provision, that no seaman shall demand any part of his wages until the arrival of the vessel at her port of discharge in the *United States,* relates merely to the time of payment, and does not affect the legal import of the contract, as to the amount of wages to be demanded and received, in the event of the loss of the ship.   The plaintiff is entitled to his stipulated wages, from the commencement of the voyage at *Bath* until the arrival of the ship at *Liverpool,* and during half the time she lay in that port. (*a*)

(3) *Miller* vs. *Stevens, Story's* edit. *of Abbot on Shipping,* 488.
(4) 1 *Peters's Adm. Cases,* 186, 215, 217.
(5) 13 *Mass. Rep.* 76, *Locke* vs. *Swan.*
(*a*)  Vide *Johnson* vs. *Simms,* 1 *Peters's Ad* 215. — 1 *Peters's Ad.* 186, note. — 2 *Dane, Ab  Ch.* 57, art. 1, p. 461.